MORIAL, Judge.
Plaintiff Tex M. Armentor is appealing from a summary judgment dismissing his suit for damages for personal injuries against three executive officers of Louisiana Power and Light Company (L P & L).
On June 22, 1970 plaintiff was employed as a groundman on a L P & L line construction crew and was hanging street lights on pre-existing poles along a service road near the Westbank Expressway in Marrero. There were energized power lines located about eight or nine feet above the light fixtures. Plaintiff was doing the work from an elevated aerial basket which was attached to a special truck. For reasons unknown the basket suddenly began to move upward bringing plaintiff’s shoulder in contact with an energized switch box and causing him to be electrified. Plaintiff’s arm and shoulder were severely burned necessitating the amputation of his arm and part of his shoulder.
Plaintiff sued the manufacturer of the basket truck, the firm that maintained and serviced it, Floyd W. Lewis, the president and chairman of the board of L P & L, *368 Louis Bass, the company’s Safety Engineer, John Tiedemann, the Division Construction Superintendent and Joseph Naquin, his immediate foreman. Lewis, Bass and Tiede-mann were dismissed from the suit on a motion for summary judgment and plaintiff has appealed. We affirm.
Plaintiff was a member of a seven man crew consisting of three groundmen, three linemen and a truck driver. Joseph Naquin was the foreman of the crew. The linemen were the more experienced men on the crew and aided in the training of the groundmen. The groundmen were eventually promoted to linemen upon the recommendation of the foreman. Plaintiff had been with L P & L for nine months prior to the accident. The crew had been hanging lights for about a month and plaintiff had been doing that type of work daily.
Plaintiff argues that the defendants failed to provide him with a safe place to work and failed to adequately supervise the activities of the crews. Specifically, he argues that defendants were negligent in failing to formulate rules with regard to de-en-ergizing wires and with regard to the use of rubber goods to shield the men from high voltage wires in the work area.
The trial judge found that Lewis, Bass and Tiedemann had no personal duty to plaintiff but rather had administrative responsibilities too remote to meet the requirements for liability under the Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In Canter the Supreme Court set out the circumstances under which an officer, agent or employee may be personally liable to a co-employee.
“1. The principal or employer owes a duty of care to the third person (which in this case includes a co-employee) breach of which has caused the damage for which recovery is sought.
“2. This duty is delegated by the principal or employer to the defendant.
“3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances — whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to othérs as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
“4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused plaintiff’s damages. If the defendant’s general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its nonperformance or malperfor-mance and has nevertheless failed to cure the risk of harm.”
Defendants Lewis, Bass and Tiedemann filed affidavits in support of their motion for summary judgment.
Floyd W. Lewis was the president and chairman of the board of L P & L in June 1970. As such his primary function was to oversee the general management and financial business of the company. He explained that the organization, which employs 1900 persons is broken down into divisions each having a specific function in the company’s operation and each having competent personnel who are responsible for performing those functions.
*369 Lewis stated in his deposition that at the time he became president L P & L was an ongoing concern and the responsibility for the supervision and safety of the personnel had already been delegated to competent persons in the company. He further stated that he was not personally involved in field operations and that he had no knowledge of the particular work that plaintiff was performing on the day of the accident or that he was subject to a hazardous situation.
Louis Bass held the position of Safety Engineer in June of 1970. He stated that his main function was to revise and annually distribute a safety manual to the various division managers throughout the state. He did not personally formulate the regulations contained in the booklet which were prepared by a State Safety Committee. He published a monthly bulletin on the safety records of each division. Bass also reviewed new types of equipment to determine if they were superior to the equipment in use by the company. He stated, however, that the aerial basket had been approved and was in operation prior to his becoming Safety Engineer. He had no responsibility for the maintenance of the equipment. He stated that he had no knowledge of the particular operation plaintiff was engaged in on the day of the accident or that plaintiff was exposed to a hazardous situation. He stated that the foreman was in charge of supervising the field crew.
John Tiedemann was responsible for the line construction and maintenance crews for the West Bank Division which included fourteen parishes. This involved the supervision of seven L P & L crews and four to twelve outside crews. His main function was to assign the work projects to the different crews. He would visit the different job sites to see how the work was progressing. However, because of the large number of the crews and the fact that they were working in a fourteen parish area, it was impossible for him to survey every crew each day. He stated that the foremen of each crew was responsible for supervising the jobs on a daily basis. He stated that his personnel function was limited to seeing that the crews were fully manned and promoting the crewmen to a higher level upon recommendation of the foreman. He stated that it was the duty of the foremen to determine whether or not a crew member could perform a certain task. He stated that he was an electrical engineer and had never been a member of a crew himself. He further stated that he was not present at the job site on the day of the accident and had no knowledge that plaintiff was exposed to a hazardous situation.
Joseph Naquin, the foreman of plaintiff’s crew admitted in his deposition that he was responsible for supervising his crew and seeing that the work was done under safe conditions. He stated in his deposition that plaintiff was doing a routine job and that there was no reason to suspect that he was working under hazardous conditions. Na-quin had used the truck for three years without incident. He stated that it had been overhauled a few months before the accident and worked perfectly.
Naquin and Tiedemann both stated that it was not feasible to de-energize the overhead lines and cut off the electricity to half of its Marrero customers for a routine job which did not require the crewmen to be in close proximity to energized wires.
Naquin also stated that each crewman was supplied rubber goods by the company and they were instructed to use them if they felt it necessary. Both Naquin and Tiedemann stated that there was a greater risk involved in covering live wires with rubber blankets than in hanging lights in an area eight or nine feet below the wires.
On the basis of the affidavits and depositions in the record we find it undisputed that defendants Lewis and Bass held administrative positions in the company and had no personal responsibility for supervision of field crews. Such responsibility had been delegated to competent personnel who were in daily contact with the field operations. Defendants Bass and Lewis had no experience in working personally with line construction crews. They were not aware nor did they have occasion to be aware that *370 plaintiff was working under hazardous conditions.
Defendant Tiedemann did have personal knowledge of the work being done by plaintiff on the day of the accident. However, it is relevant that Tiedemann was in charge of twelve to nineteen crews at one time which were spread out over a fourteen parish area. It would have been impossible for him to visit each crew daily and properly supervise the work of each. Therefore, such responsibility had been delegated to the foremen who were better able to oversee the work on a daily basis. There is no dispute that defendant Tiedemann had no knowledge that plaintiff was working under unsafe conditions. The crew had been hanging lights for about three weeks without incident.
As far as plaintiff’s argument with respect to the use of rubber goods and de-en-ergization of lines, these options were made available by the company. Each man had his own set of rubber goods and was instructed to use them if he felt it necessary. If a crew member exposed himself to danger in carrying out his work (we ignore the obvious contributory negligence question) it would logically be the duty of the foreman who was present, rather than of executive officers, to advise him to use the rubber goods.
With regard to the de-energization of wires, depriving neighborhoods of electrical service, it is apparent that such action would only be taken when absolutely necessary and that the decision to do so would be made on a job-by-job basis. Therefore, it would seem appropriate that the decision to de-energize should be made by an experienced foreman who was present on the job and who was able to survey the situation and determine whether such action was necessary.
Based on the above we find it'undisputed that the duty of providing plaintiff with a safe place to work had been delegated to his foreman Joseph Naquin and that under the holding of the Canter case, supra, defendants Bass, Tiedemann and Lewis were correctly dismissed from the suit on the motion for summary judgment.
For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.